DAVID A. DIEPENBROCK (SBN 215679)
ROBERTO G. CRUZ (SBN 342729)
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: 916.558.6000
Facsimile: 916.446.1611
Email: ddiepenbrock@weintraub.com
rcruz@weintraub.com

Attorneys for Plaintiff,
SIERRA NORTHERN RAILWAY and
MENDOCINO RAILWAY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

SIERRA NORTHERN RAILWAY, a California corporation, and MENDOCINO RAILWAY, a California corporation,

Plaintiffs,

vs.

CITY OF FORT BRAGG, and DOES 1 through 25, inclusive,

Defendants.

Case No.: 4:24-cv-04810-JST

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTON TO STRIKE**

Date: February 20, 2025
Time: 2:00 pm
Dept: Courtroom 6, Second Floor
Judge: Honorable Jon S. Tigar

Complaint Filed: August 7, 2024

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin law corporation

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT....6
II. FACTUAL BACKGROUND....7
III. ARGUMENT....9
A. Applicable Legal Standards....9
1. Pleadings Are Evaluated Under A Plausibility Standard....9
2. Courts Must Assume the Truth of All Facts Alleged And Draw All Reasonable Inferences In Plaintiffs' Favor Before Granting a Motion To Dismiss....10
3. The City Must Show That *No Plausible Claim* for Relief Is Alleged....10
B. Plaintiffs Have Sufficiently Alleged A Claim for CERCLA Response Costs....11
1. The Elements of a Claim to Recover Response Costs....12
2. The Response Costs Plaintiffs Have Incurred Were "Necessary"....12
3. The City Admits That Plaintiffs Have Alleged Cognizable Response Costs....13
4. There Is No "Shovel In the Ground" Pre-Requisite for Response Cost Claims....13
C. The City's Attack on Plaintiffs' Declaratory Relief Claim Is Without Merit....14
D. The Third Claim for Relief Alleges Viable Claims Under CERCLA....15
1. The City Rests Its Attack on A Factual Misrepresentation....15
2. The City's Attack on Plaintiffs' Contribution Claim Is Premature....15
E. The City's Motion to Strike Should Be Denied....16
F. Any Defects In the SAC Are Curable Through Amendment....18
IV. CONCLUSION....19

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**


*3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355 (9th Cir. 1990) .......... 12

*Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108 (9th Cir. 2017) .......... 13

*Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) .......... 13, 14

*Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013) .......... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 9, 10

*Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, 840 F.2d 691 (9th Cir. 1988) .......... 14

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) .......... 9

*Cardigan Mountain School v. New Hampshire Ins. Co.*, 787 F.3d 82 (1st Cir. 2015) .......... 10, 11

*City of Colton v. Am. Promotional Events, Inc.*, 614 F.3d 998 (9th Cir. 2010) .......... 12

*City of Seattle v. Monsanto Co.*, 387 F. Supp. 3d 1141 (W.D. Wash. 2019) .......... 13

*Cooper Indus., Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004) .......... 16, 17

*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 11

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) .......... 9, 11

*Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) .......... 10

*Key Tronic Corp. v. United States*, 511 U.S. 809 (1994) .......... 13


weintraub tobin chediak coleman grodin
law corporation

*Kotrous v. Goss–Jewett Co. of N. Cal., Inc.*,
523 F.3d 924 (9th Cir.2008) ....................17

*Levin v. Miller*,
763 F.3d 667 (7th Cir. 2014) ....................9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................18

*NCR Corp. v. George A. Whiting Paper Co.*,
768 F.3d 682 (7th Cir. 2014) ....................15

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum Smith Brown, P.C.*,
692 F.3d 283 (3d Cir. 2012)....................9

*OHM Remediation Services v. Evans Cooperage Co., Inc.*,
116 F.3d 1574 (5th Cir. 1997) ....................17

*OSU Student Alliance v. Ray*,
699 F.3d 1053 (9th Cir. 2012) ....................10

*Pinal Creek Grp. v. Newmont Min. Corp.*,
118 F.3d 1298 (9th Cir. 1997) ....................17

*Robertson v. Sea Pines Real Estate Cos., Inc.*,
679 F.3d 278 (4th Cir. 2012) ....................10

*Ruiz v. Bally Total Fitness Holding Corp.*,
496 F.3d 1 (1st Cir. 2007)....................10

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
99 F.4th 458 (9th Cir. 2024) ....................12, 18

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ....................9

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Investment Mgmt. Inc.*,
712 F.3d 705 (2nd Cir. 2013)....................9

*Trustees of Est. of Bishop v. Brewer Env't Indus., LLC*,
No. CV 06-00612 HG-LEK, 2010 WL 11527367 (D. Haw. Mar. 31, 2010)....................16

*United States v. Atl. Rsch. Corp.*,
551 U.S. 128 (2007)....................18

*Warwick Administrative Group v. Avon Products, Inc.*,
820 F. Supp. 116 (S.D.N.Y. 1993) ....................10

weintraub tobin chediak coleman grodin
law corporation

*Whitney v. Guys, Inc.*,
700 F.3d 1118 (8th Cir. 2012) ....................10

*Whittaker Corp. v. United States*,
825 F.3d 1002 (9th Cir. 2016) ....................15, 18

**FEDERAL STATUTES**

42 U.S.C. § 9601(9) ....................12

42 U.S.C. § 9601(23) ....................13, 14

42 U.S.C. § 9601(24) ....................14

42 U.S.C. § 9601(25) ....................11, 12, 13

42 U.S.C. § 9607 ....................6

42 U.S.C. § 9607(a)(4) ....................12

42 U.S.C. § 9607(a)(4)(B) ....................12

42 U.S.C. § 9613 ....................7, 16

42 U.S.C. § 9613(f)(1) ....................16

**RULES**

Fed. R. Civ. P. 8 ....................11

Fed. R. Civ. P. 12(b)(6) ....................10

**OTHER AUTHORITIES**

*Black's Law Dictionary* (12th ed. 2024) ....................16

2 Moore's Federal Practice – Civil § 12.34 (2020) ....................11

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Sierra Northern Railway and Mendocino Railway ("Plaintiffs") filed their Second Amended Complaint ("SAC") in order to stop the City of Fort Bragg ("City") from continuing to release untreated and contaminated stormwater onto Plaintiffs' property.

As alleged in the SAC, the City has knowingly, intentionally, and without permission been releasing—and continues to release—contaminated stormwater into the "Mill Pond" located on Plaintiffs' property. Not only has the City's historic and continued release of its contaminated stormwater onto Plaintiffs' property interfered with Plaintiffs' efforts to remediate hazardous materials left in the Mill Pond by the property's prior owners, rendering those remediation efforts far more expensive, but the City has, by its continued, and ongoing, release of its contaminated stormwater onto Plaintiffs' property, unjustly sought to shift to Plaintiffs the costs to remediate its own pollution. Plaintiffs' CERCLA claims merely seek to compel the City to pay its fair share of the costs to remediate contamination on the Property caused by the City itself. The City is well aware that its stormwater contains hazardous materials. In fact, it regularly warns the public to take precautions relating to stormwater, but conspicuously omits the Property from its areas of concern.

In its Motion to Dismiss and Strike ("Motion"), the City targets Plaintiffs' first three claims for relief, hoping to block Plaintiffs from seeking any relief under CERCLA. The Court should reject the City's attempt to shield itself from CERCLA liability, not only because Plaintiffs have adequately pleaded claims under CERCLA, but because the City's attempt to avoid CERCLA liability undermines Congress's intentions in enacting CERCLA in the first place: to give property owners like Plaintiffs the ability to hold accountable anyone who—like the City—shares responsibility for the release of hazardous materials onto real property.

Plaintiffs' First Claim for Relief seeks recovery of response costs under 42 U.S.C. § 9607 ("Section 107"). The City contends that Plaintiffs supposedly have failed to plead with adequate specificity the response costs it has actually incurred to date. Such evidentiary facts need not be pleaded. Plaintiffs simply need to allege sufficient facts to show that its claim to recover response costs is plausible. The SAC easily meets that standard because, among other things, Plaintiffs allege that their predecessor-in-interest, Georgia Pacific, incurred over $31 million in response costs; **the**

**California Department of Toxic Substances Control ("DTSC") added Plaintiffs to the clean-up order for the Property**; and Plaintiffs have incurred, and will continue incurring, response costs. Plaintiffs anticipate it will cost $10 to 50 million to complete the remediation of the site.[1]

The City's motion to dismiss Plaintiffs' Second Claim for Declaratory Relief is wholly derivative of its attacks on Plaintiffs' other CERCLA claims, merely asserting that Plaintiffs supposedly failed to adequately allege any CERCLA claims. Because Plaintiffs have at least alleged a viable claim for response costs, the City's attack on the Second Claim for Relief fails.

Plaintiffs' Third Claim for Relief states a viable claim for contribution under CERCLA. The City's attack on this claim is based upon the false assertion that Plaintiffs have not been added to the DTSC Order. But as Plaintiffs allege in their SAC, the DTSC has indeed named Plaintiffs as Respondents to the Site Investigation and Remediation Order ("Order") for the Property. SAC, ¶¶ 2, 43. As federal courts have recognized that being named in such an order may entitle a party to seek contribution under 42 U.S.C. § 9613 ("Section 113"), the City's attack on Plaintiffs' Third Claim for Relief fails.

The City's fourth and final argument seeks to strike paragraph 37 of the SAC because it supposedly seeks *joint and several liability* from the City. The motion to strike has no merit because Paragraph 37 does not seek *joint and several* liability. It seeks only *joint* liability, i.e., for the City to pay its equitable share of the clean-up. Because the SAC pleads sufficient facts to support holding the City partially liable for pollution the City itself has caused, and continues to cause, the motion to strike should be denied.

## II. FACTUAL BACKGROUND

Plaintiffs acquired the site of a former sawmill, which Union Lumber Company began operating in 1885 ("Property"). SAC, ¶ 15. Union Lumber Company merged with Boise Cascade Corporation in 1968, which owned and operated the Property until 1973, when it sold the Property to Georgia-Pacific. *Id*. Georgia-Pacific ceased operations on the Property in 2002, such that by 2012,

[1] The City has substantial influence of the remediation methods used, and is in a position to push the cost to the upper end of that range, which Plaintiffs believe would be unnecessary and therefore wasteful. If the City wishes to impose wasteful and unnecessary response costs, then it should bear the full cost of those additional costs.

weintraub tobin chediak coleman grodin
law corporation

most of the structures and equipment associated with lumber production had been removed and the Property was unoccupied and unused except for a small office maintained by Georgia-Pacific and a wastewater treatment plant owned and operated by the City. *Id.*

The Property contains a water body commonly known as "Mill Pond," which is approximately eight acres in size and is the largest surface water body on the Property. SAC, ¶ 17. The City has for many years intentionally released its untreated municipal stormwater into Mill Pond, both via sheet flow and via the Alder Creek and Maple Creek outfalls which are controlled by the City. *Id.*, ¶ 18. These outfalls consist of the ends of two pipelines via which the City conveys untreated municipal stormwater from City locations upgradient from the Property. *Id*. The City has continued to release its untreated and contaminated stormwater runoff into Mill Pond, depositing ever more hazardous materials into Mill Pond despite the cessation of all commercial activities on the property more than a decade ago. *Id*.

Stormwater quality within the Mill Pond drainage basin has been evaluated over multiple sampling efforts performed under the supervision of licensed Professional Engineers and Registered Geologists. SAC, ¶ 20. A sampling effort was conducted in 2011 to support the design of an alternate surface water conveyance feature for Mill Pond. *Id*. The results of this evaluation were summarized in reports prepared by a professional engineer with Arcadis U.S., Inc., and more recent reports, as well as a remedial plan, were prepared by Kennedy Jenks, a water and industrial engineering firm. *Id*. The Kennedy Jenks reports show that the stormwater that the City continues to release into Mill Pond not only contains dioxins and furans at concentrations that significantly exceed applicable water quality standards, but that 80-95 percent of the pollutants entering Mill Pond via stormwater do so via the City's untreated municipal stormwater discharges. *Id.*, ¶ 21. Based on these findings, Plaintiffs allege that the City has been using, and continues to use, Mill Pond as a detention basin and treatment facility for the storage and treatment of stormwater that the City knows to be toxic, hazardous, and contaminated, for which Plaintiffs seek a just remedy. *Id.*, ¶ 22.

Finally, the SAC expressly alleges that the California Department of Toxic Substances Control's ("DTSC") has named Plaintiffs as Respondents to the Site Investigation and Remediation Order ("Order") for the Property. SAC, ¶¶ 2, 43. The DTSC first issued its Order relating to the

weintraub tobin chediak coleman grodin law corporation

Property in 2007. *Id.*, ¶ 43. In 2022, DTSC issued a First Amendment to the Order, which added Plaintiff Mendocino Railway as an additional Respondent. *Id*. In 2024, DTSC issued a Second Amendment to the Order to add Plaintiff Sierra Northern Railway as an additional Respondent. *Id.*

## III. <u>ARGUMENT</u>

### A. <u>Applicable Legal Standards</u>

#### 1. <u>Pleadings Are Evaluated Under A Plausibility Standard</u>

In reviewing a motion to dismiss, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011). To do so, the pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). This rule requires that a party "demonstrate the plausibility, as opposed to conceivability, of its causes of action in the complaint." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum Smith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012); *see also Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014) (stating that Supreme Court in *Twombly/Iqbal* "wrote that judges may bypass implausible allegations and insist that complaints contain enough detail to allow courts to separate fantasy from claims worth litigating") (emphasis supplied).

The purpose of the plausibility requirement is "to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705, 719 (2nd Cir. 2013); *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) —"The plausibility standard is a screening mechanism designed to weed out cases that do not warrant either discovery or trial"; *Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 558-559; *see also Somers v. Apple, Inc*. 729 F.3d 953, 966 (9th Cir. 2013) (emphasis supplied). As long as a plausible claim is pled, the complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, *supra*, 550 US at 556. (Emphasis supplied.) Importantly, Courts generally agree that plaintiff need not "make its case"

weintraub tobin chediak coleman grodin
law corporation

against defendant by pleading specific evidentiary facts supporting each element of a cause of action. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) ("**plaintiff's failure to prove the case on the pleadings does not warrant dismissal**"; *Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) ("***Iqbal* and *Twombly* do not require a plaintiff to prove his case in the complaint**"; *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (emphases supplied).

2. Courts Must Assume the Truth of All Facts Alleged And Draw All Reasonable Inferences In Plaintiffs' Favor Before Granting a Motion To Dismiss

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give ... plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ). To survive a motion to dismiss, the complaint need only state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" *Id*. at 555 (citations and footnote omitted) (emphasis supplied). "In undertaking our inquiry, we must 'accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor.'" (citation omitted) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir.2012)). *Cardigan Mountain School v. New Hampshire Ins. Co.* 787 F.3d 82, 87 (1st Cir. 2015) (emphasis supplied). "In doing so, we recognize that "circumstantial evidence often suffices" to render an asserted claim plausible in the pleading context. (citation omitted) (quoting *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 56 (1st Cir.2013)) (emphasis supplied). "Under the Federal Rules of Civil Procedure, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Cardigan Mountain School v. New Hampshire Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). Nor is there a heightened pleading standard that applies to CERCLA cases. *Warwick Administrative Group v. Avon Products, Inc.*, 820 F. Supp. 116, 121 (S.D.N.Y. 1993).

3. The City Must Show That *No Plausible Claim* for Relief Is Alleged

A defendant bringing a motion to dismiss under Rule 12(b)(6) bears the burden of persuasion to establish that no claim has been stated. *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1422 (3d

weintraub tobin chediak coleman grodin
law corporation

Cir. 1991) (emphasis supplied); 2 Moore's Federal Practice – Civil § 12.34 (2020). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable inferences must be drawn in the plaintiff's favor. 2 Moore's Federal Practice - Civil § 12.34. Thus, "it is not necessary for the pleading to also rebut other possible explanations for the conduct alleged, even if those alternatives might appear to be more likely." *Id. See also Cardigan Mountain School v. New Hampshire Ins. Co.* 787 F.3d 82, 88 (1st Cir. 2015) (*Twombley* imposes plausibility standard, not "probability requirement" at pleading stage). Dismissal of a complaint is not warranted based upon "an imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). This standard of review compels denial of the City's motion to dismiss all of Plaintiffs' CERCLA claims without leave to amend.

**B. Plaintiffs Have Sufficiently Alleged A Claim for CERCLA Response Costs**

Plaintiffs' First Claim for Relief seeks recovery of response costs under Section 107(a) of CERCLA. Among other things, the SAC alleges that Plaintiffs' predecessor-in-interest Georgia Pacific incurred over $31 million in response costs. That allegation demonstrates the magnitude of the original contamination and its complexity. Plaintiffs further allege that they have faced charges for investigation, remediation, and contamination clean-up (SAC, ¶ 27), and that they "have incurred …"response costs within the meaning of 42 U.S.C. § 9601(25), consistent with the National Contingency Plan under CERCLA …, to abate the releases or threatened releases of hazardous substances onto the Property and Mill Pond." SAC, ¶ 34 (emphasis added). Further confirming the substantial scope and complexity of the situation, the SAC alleges that the total cost to complete the clean-up is expected to range from $10 million to $50 million. *Id*. Finally, the SAC alleges that the DTSC has added Plaintiffs to the DTSC Site Investigation and Remediation Order. SAC, ¶¶ 2, 43.

The City concedes that FRCP Rule 8—not Rule 9—applies to CERCLA claims, further conceding that Rule 8 "does not require detailed factual allegations." Dkt. 28 at 5:12-14. As evidentiary facts need not be pleaded, Plaintiffs need only allege sufficient facts to show that a claim for relief is *plausible*. As shown below, Plaintiffs easily meet that standard here.

/ / /

weintraub tobin chediak coleman grodin law corporation

1. The Elements of a Claim to Recover Response Costs

To recover response costs under CERCLA, a plaintiff must show "that (1) the site on which the hazardous substances are contained is a "facility" under ... 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a)." *Santa Clarita Valley Water Agency v. Whittaker Corp*., 99 F.4th 458, 476 (9th Cir. 2024) (appeal following trial); *3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir. 1990) (appeal from order granting motion for judgment on the pleadings). The City's Motion attacks only the "necessary" element, thereby conceding that the rest are adequately alleged. As shown below, Plaintiffs have alleged sufficient facts to establish that "necessary" element.

2. The Response Costs Plaintiffs Have Incurred Were "Necessary"

"Response costs are considered necessary when 'an actual and real threat to human health or the environment exists.'" *City of Colton v. Am. Promotional Events, Inc.*, 614 F.3d 998, 1003 (9th Cir. 2010) (quoting *Carson Harbor Village, Ltd. v. Unocal Corp*., 270 F.3d 863, 871 (9th Cir.2001) (en banc)). The SAC alleges that the California Department of Toxic Substances Control ("DTSC") issued a Site Investigation and Remediation Order ("Order") relating to the Property in 2007. SAC, ¶¶ 19, 43. The SAC further alleges that the Order names both Plaintiffs in it. SAC, ¶¶ 2, 43. The correct inference to be drawn from these allegations is that conditions in the Mill Pond pose an actual and real threat to human health or the environment, which means the response costs Plaintiffs incurred were "necessary."

Additionally, the SAC incorporates the word "necessary" by reference to 42 U.S.C. § 9601(25), which defines "response" to include "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). CERCLA defines "remove" or "removal" to include, among other things:

> such actions as may be **necessary** to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be

weintraub tobin chediak coleman grodin law corporation

weintraub tobin chediak coleman grodin law corporation

> **necessary** to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601(23) (emphasis added); *Asarco LLC v. Atl. Richfield Co*., 866 F.3d 1108, 1115-16 (9th Cir. 2017) (construing meaning of "response" under CERCLA to include "remove", etc.). The SAC thus sufficiently alleges the "necessary" element of a claim for response costs.

3. The City Admits That Plaintiffs Have Alleged Cognizable Response Costs

The Ninth Circuit has held that a plaintiff need allege no more than one type of response cost cognizable under CERCLA to make out prima facie case under Section 107. *Ascon Properties, Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1154 (9th Cir. 1989). In a concession fatal to its Motion, the City admits that Plaintiffs have alleged that they have incurred attorney's fees as response costs, and further concedes that such costs are a cognizable response cost under CERCLA. *See* Dkt. 28 at 11:1-3. *Id*. (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 820 (1994)). The City is right to concede this point as the Supreme Court in *Key Tronic* explained that a "lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B)." *Key Tronic Corp.*, 511 U.S. at 820. As long as the work "significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs," it qualifies as a response cost. *Id*. Those questions, along wither the broader question of whether Plaintiffs' response action was necessary and consistent with the criteria set forth in the contingency plan" are factual ones to be determined at trial. *City of Seattle v. Monsanto Co*., 387 F. Supp. 3d 1141, 1158–59 (W.D. Wash. 2019) (quoting *Cadillac Fairview/California, Inc. v. Dow Chem. Co*., 840 F.2d 691, 695 (9th Cir. 1988)).

4. There Is No "Shovel In the Ground" Pre-Requisite for Response Cost Claims

The City also asserts that Plaintiffs supposedly failed to state a claim for recovery of response costs under Section 107(a), because Plaintiffs supposedly have put "no shovel in the ground yet." Dkt. 28 at 1:27-28. But CERCLA does not impose any such "shovel in the ground" requirement for recovery of response costs. This is because CERCLA broadly defines "response" to include: "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). Congress in turn defined each of these terms broadly. "Removal" includes "the cleanup or removal of released hazardous substances from

the environment" and any actions that may be necessary "in the event of the threat of release of hazardous substances into the environment." *Id.* § 9601(23). Similarly, "remedial action" is defined to include "actions consistent with permanent remedy taken instead of or in addition to removal actions . . . to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* § 9601(24).

Consistent with these broad definitions, the Ninth Circuit has held that "response costs" under CERCLA include the costs of **investigation or testing** for the presence of hazardous wastes. *Ascon Properties, Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1153 (9th Cir. 1989) (noting that as a result, "it is conceivable that a claimant could recover for these costs under section 107(a) before the potential means of release have been identified.") The City guts its own argument in favorably citing *Ascon* as the Ninth Circuit held in that case that costs incurred to develop a remedial action plan qualified as "response costs." *Id.*, 866 F.2d at 1154. In reaching this conclusion, the *Ascon* court followed *Cadillac Fairview/California v. Dow Chemical Co*., 840 F.2d 691, 695 (9th Cir.1988), where the Ninth Circuit had also held that testing costs qualify as "response costs." Thus, as even the City seems to admit, CERCLA indisputably does <u>not</u> make "shovel in the ground" costs a pre-requisite to bringing a claim for response costs.

As shown above, the City's demand for additional facts to be pled is without legal justification. The Court should thus deny the City's motion to dismiss the First Claim for Relief.

**C. <u>The City's Attack on Plaintiffs' Declaratory Relief Claim Is Without Merit</u>**

The City asserts that Plaintiffs' Second Claim for Relief, which seeks declaratory relief under CERCLA, should be dismissed because Plaintiffs supposedly failed to allege any viable claim under CERCLA. Dkt. 28 at 8:21. That is the full extent of the City's challenge to that claim. The City's challenge can be addressed equally quickly: the City's challenge fails because, based on the above-cited law, and the City's admission that attorney's fees are a cognizable response cost, Plaintiffs have at least alleged a viable claim for recovery of response costs in their First claim for Relief. As with the other of the City's challenges, the City's attack on Plaintiffs' Second Claim for Relief is based on a false premise and so should be denied.

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

**D. <u>The Third Claim for Relief Alleges Viable Claims Under CERCLA</u>**

1. <u>The City Rests Its Attack on A Factual Misrepresentation</u>

The City falsely asserts that "[t]he [SAC] does not allege that the DTSC has actually issued an order[2] that names [Plaintiffs], but only implies that the situation requires that DTSC do so." Dkt. 28, 8:4-7. In fact, the SAC expressly alleges that the DTSC named both Plaintiffs as responsible parties to its Order. SAC, ¶ 2 ("the City's contaminated stormwater has precipitated out contaminated sediment, which has accumulated in Mill Pond in significant quantities, and requires response actions per the California Department of Toxic Substances Control (DTSC) through an Order that names both [Sierra Northern Railway] and [Mendocino Railway]."); SAC, ¶ 43 ("On June 9, 2022, DTSC issued a First Amendment to the Order, which among other things, added Mendocino Railway as an additional Respondent. On December 4, 2024, DTSC issued a Second Amendment to the Order to add Sierra Northern Railway as an additional Respondent."). The City's astonishing lack of candor on this point alone supports denial of its Motion in its entirety.

The City's false assertion reveals that its attack must depend upon Plaintiffs not being named in the Order. The DTSC's inclusion of Plaintiffs in its Order establishes that Plaintiffs have indeed alleged at least a plausible claim for contribution as courts have held that cleanup expenses incurred under an administrative order may be recovered through a contribution action. *Whittaker Corp. v. United States*, 825 F.3d 1002, 1009 (9th Cir. 2016); *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 692 (7th Cir. 2014).

2. <u>The City's Attack on Plaintiffs' Contribution Claim Is Premature</u>

The City's reliance on the false assertion that Plaintiffs have not been named in the DTSC's Order is shown by its further assertion that Plaintiffs "have failed to state a claim for contribution under CERCLA 113 because no person has yet filed a civil action against them and [Plaintiffs] have not resolved liability to the United States or a States." Dkt. 28 at 7:1-3. In support of this argument,

---

[2] The DTSC Order is an enforcement order compelling a responsible party to investigate and clean up a contaminated property that poses an imminent and substantial threat to human health and the environment, typically involving hazardous waste cleanup. DTSC uses its regulatory power under California law to issue these orders. If a responsible party fails to comply with a DTSC order, the agency can take further legal action, including penalties and potential court proceedings.

the City relies upon *Cooper Indus., Inc. v. Aviall Services, Inc*., 543 U.S. 157 (2004), where "the U.S. Supreme Court held that where a private party: (1) voluntarily cleans up its property with no state or federal enforcement or intervention; and (2) incurs all of the associated costs and completes the cleanup, it cannot later bring a claim for contribution under § 9613 against a potentially responsible party." *Trustees of Est. of Bishop v. Brewer Env't Indus*.*, LLC,* No. CV 06-00612 HG-LEK, 2010 WL 11527367, at *7 (D. Haw. Mar. 31, 2010). Notably, because the plaintiff in *Cooper* was never subject to an administrative order, the Supreme Court did "not decide whether such an order would qualify as a "civil action under section 9606 ... or under section 9607(a)" of CERCLA. 42 U.S.C. § 9613(f)(1)." *Cooper Indus., Inc*., 543 U.S. at 168 n5. But here, as shown above, Plaintiffs have been named in an administrative order, and they have not completed cleanup of the Property. Courts have held in similar circumstances that dismissal of a Section 113 claim before trial would be premature. *Trustees of Est. of Bishop*, No. CV 06-00612 HG-LEK, 2010 WL 11527367, at *7. There is no reason for the Court not to reach the same conclusion here, requiring the denial of the City's Motion to Dismiss Plaintiffs' Third Claim for Relief.

**E. <u>The City's Motion to Strike Should Be Denied</u>**

The City's motion to strike should be denied because it is based on yet another blatant misrepresentation. The City asserts (falsely) that paragraph 37 of the SAC seeks to impose "joint and several liability." Dkt. 28 at 9:15-19. In fact, that Paragraph alleges that the City is "jointly liable," for the response costs because the City has been and continues to release contaminated stormwater onto the Property.

During the meet and confer process regarding the *prior* allegation — in the now superseded Amended Complaint — the City asserted that "joint and several liability was unavailable to a property owner because by definition such liability could shift the entire liability to the City. *See, e.g., Black's Law Dictionary* (12th ed. 2024). As a result, Plaintiffs amended paragraph 37 of their SAC to allege only that the City bears "joint liability," which means "Liability shared by two or more parties." *Id*. The allegations of the SAC make it clear that Plaintiffs merely seek to hold the City liable for its equitable share of the response costs required because of the City's own past and ongoing pollution of Plaintiffs' property.

weintraub tobin chediak coleman grodin
law corporation

The SAC does not allege that the City is solely liable for all response costs. It instead alleges that the City's contaminated stormwater has brought, and continues to bring, *more toxic pollution* onto the Property. For example, paragraph 21 alleges that 80 to 95 percent of pollutants entering Mill Pond via stormwater are due to the City's continued intentional and knowing release of its untreated stormwater onto the Property. The SAC also alleges that the City "has been, and continues to use Mill Pond as a detention basin and treatment facility for the storage and treatment of its toxic, hazardous, and contaminated stormwater discharges." SAC, ¶ 22. The SAC further alleges that this stormwater "has and will increase the response and remediation costs Plaintiffs have and will incur "because the City continues to increase the levels of hazardous substances in the Mill Pond notwithstanding the cessation of commercial activity on the Property over 20 years ago." *Id.*, ¶ 23. The proposition that the City should pay its fair share of response costs is inherent in these allegations, and is also expressly alleged in the Tenth Claim for Relief.

These allegations are entirely consistent with CERCLA's broad remedial purpose, which is to shift the cost of environmental response to the actual parties who benefitted from the actions that caused the harm. *OHM Remediation Services v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997) (citing *Matter of Bell Petroleum Services, Inc.*, 3 F.3d 889, 894 (5th Cir.1993). Because the City has caused, and keeps causing, harm to the Property, by having released, and continuing to release, its contaminated stormwater onto the Property, it is only just that it should pay its fair share of the clean-up. The SAC seeks nothing more from the City.

The City cited only two CERCLA cases in support of its motion to strike: *Pinal Creek Grp. v. Newmont Min. Corp.*, 118 F.3d 1298, 1301 (9th Cir. 1997) and *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 169 (2004). Neither supports its motion. Since the Ninth Circuit has overruled *Pinal Creek* (*see Kotrous v. Goss–Jewett Co. of N. Cal., Inc.*, 523 F.3d 924, 933 (9th Cir.2008) ("we overruled Pinal Creek's holding that an action between PRPs is necessarily for contribution.")), the City cannot rely on *Pinal Creek* for its motion. Nor does *Cooper Industries* aid the City, because that court expressly declined to reach the proposition for which the City has cited it. *Cooper Indus., Inc.*, 543 U.S. at 169 ("We think it more prudent to withhold judgment on these matters.") The City has thus failed to support its motion to strike with any applicable CERCLA case.

In summary, between the City's failure to cite any good law in support of its motion to strike, and its attack upon a non-existent allegation (contained in a superseded pleading), the City has failed to show that the allegations in Paragraph 37 of the operative SAC have no bearing on the current controversy. In fact, just the opposite is true: the extent of the City's share of the liability for response costs is a central issue to be decided on the merits.

### F. Any Defects In the SAC Are Curable Through Amendment

Unsurprisingly at this point, the City's argument against allowing leave to amend is based upon yet another blatant misrepresentation to the Court. Specifically, the City falsely asserts that Plaintiffs have had three chances to state their CERCLA claims. Dkt. at 10:5-6. In fact, Plaintiffs' original complaint did not include any CERCLA claims. The Amended Complaint was the first of Plaintiffs' pleadings to include any CERCLA claim. Plaintiffs in good faith met and conferred with the City and agreed to amend that pleading in an effort to avoid unnecessary motion work.

Further, though the City asserts that further amendment would be "futile" (Dkt. 28 at 15:4-7), the City then guts its own assertion by conceding that Plaintiffs "may be able to state a properly pleaded CERLA 107 cost recovery action…." Dkt. 28 at 13:16-17. This is confirmed by the Ninth Circuit's decision in *Whittaker Corp. v. United States*, 825 F.3d 1002, which establishes that Plaintiffs may indeed bring such a claim. After a thorough examination of applicable caselaw, the *Whittaker* court held that the plaintiff corporation in that case could seek reimbursement for cleanup expenses it had incurred that were separate from those for which it had been found liable in a prior suit, and that the plaintiff was not required to wait to bring those claims in a Section 113 contribution action after its liability had been resolved in the separate lawsuit. *Whittaker Corp.*, 825 F.3d at 1011-13. In so holding, the Ninth Circuit was merely following *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 138-39 (2007), where the court observed that "[a] private party may recover under § 107(a) without any establishment of liability to a third party."

Thus, should the Court—despite the law set forth above—perceive any defect in Plaintiffs' SAC, the Court should grant Plaintiffs leave to amend. *See, e.g., Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.")

weintraub tobin chediak coleman grodin law corporation

## IV. CONCLUSION

The City's Motion is based upon multiple egregious misrepresentations regarding the SAC. Those misrepresentations and the City's legal concessions are fatal to the City's Motion. Central among the City's misrepresentations is its assertion that the SAC does not allege that Plaintiffs are included Site Investigation and Remediation Order ("Order") for the Property, when in fact, the SAC expressly alleges that Plaintiffs are included. Those allegations — together with the City's admissions that attorney's fees constitute cognizable response costs and that Plaintiffs have alleged they have incurred such costs — defeat the City's attack on Plaintiffs' claim for response costs. Because that claim is clearly viable, the City's derivative attack on the Second Cause of Action necessarily fails. DTSC's inclusion of Plaintiffs in the Order likewise defeats the City's attack on Plaintiffs' contribution claim. Finally, the City's motion to strike has no merit because it attacks allegations that are not even present in the targeted paragraph. The City's Motion should therefore be denied, in full.

Respectfully submitted,

Dated: January 17, 2025

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

By: */s/ David A. Diepenbrock*
David A. Diepenbrock
Attorneys for Plaintiffs
SIERRA NORTHERN RAILWAY and
MENDOCINO RAILWAY

**weintraub tobin** chediak coleman grodin
law corporation