DAVID A. DIEPENBROCK (SBN 215679)
ANNA R. MARCROFT (SBN 343257)
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:   916.558.6000
Facsimile:    916.446.1611
Email: ddiepenbrock@weintraub.com
       amarcroft@weintraub.com

Attorneys for Plaintiffs,
SIERRA NORTHERN RAILWAY and
MENDOCINO RAILWAY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| SIERRA NORTHERN RAILWAY, a California corporation, and MENDOCINO RAILWAY, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF FORT BRAGG, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 4:24-cv-04810-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:   January 27, 2026<br>Time:  2:00 pm<br>Dept:   6<br>Judge: Honorable Jon S. Tigar<br><br>Complaint Filed: August 7, 2024 |

## I. JURISDICTION AND SERVICE

This Court has jurisdiction over this action based on the claims alleged under federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs have asserted a takings claim under the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution through 42 U.S.C. § 1983 as well as supplemental state law claims. The operative Third Amended Complaint also alleges claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). Defendant was served on September 9, 2024.

## II. FACTS

Neither party admits or concedes to anything the adverse party states in its or their respective statement of facts.

### A. Plaintiffs' Statement of Facts

The Property at issue is the former site of a sawmill, which Union Lumber Company began operating in 1885. Union Lumber Company later merged with Boise Cascade Corporation, which owned and operated the Property until 1973, when it sold the Property to Georgia-Pacific. Georgia-Pacific ceased operations on the Property on August 8, 2002, such that by May of 2012, most of the structures and equipment associated with lumber production had been removed and the Property was unoccupied and unused except for a small office maintained by Georgia-Pacific and a wastewater treatment plant owned and operated by the City of Fort Bragg.

In 2004, Georgia-Pacific voluntarily began investigating alleged environmental concerns at the Property. The Regional Water Quality Control Board, North Coast Region oversaw investigation activities until the California Environmental Protection Agency, Department of Toxic Substances Control ("DTSC") assumed the role of lead regulatory agency in August 2006. On information and belief, Georgia-Pacific expended approximately $31,400,000 in response costs at the Property through November 19, 2011, when MRY acquired the Property.

The contamination at the Mill was the subject of a 2012 cost recovery litigation brought by Georgia-Pacific against Officemax and Boise Cascade, *Georgia-Pacific, LLC v. Officemax Inc. and Boise Cascade, LLC*, U.S. Dist. Ct. N.D. Cal., Case No. 12-02797-RS. Defendant City was impleaded

1  by Defendants as a Third-Party Defendant. The case against the City was ultimately dismissed with
2  prejudice. Plaintiffs had no involvement in that lawsuit, no ability to control the manner in which it
3  was conducted, nor any input on how it was resolved.

4        The Property contains a water body commonly known as the "Mill Pond," and also referred
5  to as "Pond 8." Mill Pond is approximately eight (8) acres in size and is the largest surface water
6  body on the Property. The Mill Pond has for years received the City's untreated municipal stormwater
7  that enters the pond via sheet flow and via the Alder Creek and Maple Creek outfalls controlled by
8  the City, located in the eastern section of the Pond.

9        The City has, on a continuing and on-going basis, discharged, and continues to discharge
10 municipal stormwater into Mill Pond with no end in sight. Stormwater quality within the Mill Pond
11 drainage basin has been evaluated over multiple sampling efforts performed under the supervision of
12 licensed Professional Engineers and Registered Geologists. A sampling effort was conducted,
13 beginning in 2011, to support the design of an alternate surface water conveyance feature for Mill
14 Pond. The reports show, among other things, that (1) stormwater entering Mill Pond contains dioxins
15 and furans at concentrations that exceed applicable water quality standards; (2) a significant majority
16 of the pollutants (80 to 95 percent) entering Mill Pond via stormwater are from untreated municipal
17 stormwater discharged by the City onto the Property and; (3) approximately 54.5 percent of water
18 received by Mill Pond is untreated municipal stormwater discharged onto the Property by the City.
19 Dioxin levels are higher in the area of Mill Pond where the City's stormwater discharges than in the
20 area that received discharges from the former Mill operations.

21       The City's continuing deposit of untreated and contaminated stormwater, containing
22 hazardous substances, including dioxins and furans, has and will increase the response and
23 remediation costs Plaintiffs have incurred and will incur because the City continues to increase the
24 levels of hazardous substances in the Mill Pond notwithstanding the cessation of commercial activity
25 on the Property over 20 years ago.

26       Plaintiffs' Third Amended Complaint includes claims for relief under the Comprehensive
27 Environmental Response, Compensation and Liability Act ("CERCLA"), a Fifth Amendment
28 ///

Taking, and also asserts state-law claims for contribution, continuing nuisance, continuing trespass, negligence, and inverse condemnation.

### B. Defendant's Statement of Facts

This is a federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") cost recovery action. The facility at issue is the former Georgia-Pacific lumber mill (the "Mill"). Georgia-Pacific, LLC is the prior owner of the Mill. The Mill was established in 1885 and shut down in 2002. It is located in the City of Fort Bragg on approximately 415 acres of ocean-front land. Fort Bragg never owned or operated the Mill during its 117 years of operation.

The primary allegation against Fort Bragg is that its storm water from Alder Creek contaminated Pond 8, one of the industrial ponds at the Mill. This storm water was used by the Mill operators as part of the Mill's industrial water supply. Fort Bragg did not determine how its storm water would be used or where it would be disposed.

The primary contaminants in this case are a family of chemical compounds called dioxins and furans. These compounds are formed by the incomplete combustion of wood. For the 117 years it operated, the major fuel sources at the Mill were wood debris and bark from milled lumber. The Mill operators burned this wood to operate the Mill and create electricity, the excess of which was sold. Residue from the burned wood, and the resulting dioxin contamination, is found throughout the Mill. Residue from burned wood is called "fly-ash." In approximately 1984, the State of California designated fly-ash a presumptive hazardous waste due to its toxicity.

Plaintiffs claim that Defendant's storm water caused the dioxin contamination in Pond 8. Defendant believes Plaintiffs are incorrect for the following reasons:

1. Dioxin contamination is found throughout the Mill, even at locations where Fort Bragg is not alleged to have contributed storm water;
2. The Mill operators' decision to create Pond 8 and use it as the Mill's industrial water source was made before the City of Fort Bragg's existence;
3. The Mill operators contaminated Pond 8 by using it as a critical component of their operations for milling lumber and generating electricity; and

///

    4.   The levels of contamination found in Pond 8 far exceed that which could be caused by Fort Bragg's storm water.

As Plaintiff states, DTSC is overseeing cleanup of the Property under a site investigation and remediation order (the "Order"). The Order was amended in June 2022 to add Plaintiff Mendocino Railway as a Respondent. In 2024, Plaintiff Sierra Northern Railway was added as a Respondent to the Order. One or both Plaintiffs requested that DTSC add Defendant to the Order, but DTSC did not do so.

## III.   LEGAL ISSUES

The principal disputed legal issues are whether the City is liable for any of its stormwater discharges onto the Property, and for remediation costs at the Subject Property.

Another primary dispute is whether Defendants, as alleged potentially responsible parties for the Property, and where City has asserted a CERCLA Section 113 counterclaim against Plaintiffs as alleged potentially responsible parties, should have any recovery by Plaintiffs from Defendants equitably allocated among all Parties under CERCLA Section 113 equitable allocation principles.

## IV.   MOTIONS

On January 6, 2025, the City filed a motion to dismiss Plaintiffs' CERCLA claims, which was granted with leave to amend. (ECF No. 45.) The City may seek summary disposition at a later date.

## V.   PLEADINGS

Plaintiffs filed and served their Third Amended Complaint on August 4, 2025. (ECF No. 46.) The City filed its Answer to Plaintiffs' Third Amended Complaint on October 27, 2025. (ECF No. 55.). The City may add additional parties via cross-complaint, including but not limited to Georgia-Pacific, LLC and the California Department of Transportation aka Caltrans. Defendant originally sought to implead these parties by January 19, 2026. The City, however, has not yet completed its assessment of this issue. The City therefore proposes that any motion to implead new parties be left to the applicable standard of Federal Rule of Civil Procedure, Rule 14 (Third Party Practice).

## VI.   EVIDENCE PRESERVATION

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and

weintraub tobin chediak coleman grodin
law corporation

1 conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to
2 preserve evidence relevant to the issues reasonably evident in this action.

## VII. DISCLOSURES

Both parties have served their initial disclosures.

## VIII. DISCOVERY

The parties have engaged in settlement discussions aimed at a global resolution of all disputes presently pending between them. Accordingly, they deferred making their initial disclosures, and taking discovery in this case. Particular discovery disputes are not anticipated at this time.

## IX. CLASS ACTIONS

Not applicable.

## X. RELATED CASES

There are no cases that are "related" in the strict sense. However, Mendocino Railway is currently adverse to the City of Fort Bragg in two pending matters: *City of Fort Bragg v. Mendocino Railway, Mendocino County Superior Court*, Case No. 21CV00850; *Mendocino Railway v. Ainsworth*, U.S. Dist. Ct., N.D. Cal., Case No. 4:22-cv-04597-JST (currently on appeal).

The contamination at the Mill was the subject of a 2012 cost recovery litigation brought by Georgia-Pacific against Officemax and Boise Cascade, *Georgia-Pacific, LLC v. Officemax Inc. and Boise Cascade, LLC*, U.S. Dist. Ct. N.D. Cal., Case No. 12-02797-RS. As stated above, Defendant City was impleaded by Defendants as a Third-Party Defendant. The case against the City was ultimately dismissed with prejudice. Plaintiffs had no involvement in that lawsuit, no ability to control the manner in which it was conducted, nor any input on how it was resolved.

## XI. RELIEF

Plaintiffs seek: (1) damages for costs incurred and to be incurred for the investigation, removal, remediation and/or other mitigation of the contamination or damage to the Property and Mill Pond; (2) an order requiring the City to take such action as may be necessary to remediate and/or to remove all contamination at the Property and Mill Pond caused or conveyed by the City; (3) an order enjoining the City from taking any action(s) that would materially interfere with Plaintiffs' use and enjoyment of the Property and/or Mill Pond, including to cease and desist from continuing to

1 discharge contaminated and polluted stormwater onto the Property; (4) monetary relief on their
2 takings, nuisance, trespass, inverse condemnation, and negligence claims; (5) a declaratory judgment
3 under CERCLA § 113(g)(2), 28 U.S.C. §§ 2201 and 2202, and/or state law that some or all future
4 costs of removal and/or remedial action incurred by Plaintiffs in response to releases caused by the
5 City are costs for which the City must reimburse Plaintiffs, including the incremental cost of any
6 City-mandated "truck and dump" remediation method, and that Plaintiffs' proposed remediation plan
7 for Pond 8 is consistent with the National Contingency Plan.

Defendant primarily seeks the following: (1) denial of any relief whatsoever to Plaintiffs, (2) an award of costs, expert consultants' fees, witness fees, and reasonable attorneys' fees incurred in the defense of this action including the counterclaims and cross actions, (3) if Defendant has any liability to Plaintiffs, contribution from Plaintiffs under CERCLA Section 113, preferably resulting in a zero allocation of cleanup cost to Defendant;  and (4) a declaration that Plaintiffs are obligated to pay to the City all future response costs and any other costs incurred by City hereafter in response, removal or remediation efforts incurred.

## XII. SETTLEMENT AND ADR

The Parties held a private mediation session on December 19, 2025. Although there were some productive discussions, the case did not resolve. If the City stipulates to bringing appropriate representatives at a further session, Plaintiffs would be willing to hold an additional mediation session with the same neutral. Regardless of whether a further mediation session is held, the parties are amenable to participating in a settlement conference to be held shortly after the Parties' proposed expert witness disclosure deadline, or approximately 75 days before trial.

## XIII. OTHER REFERENCES

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. NARROWING OF ISSUES

The parties have not identified any specific proposal to narrow the issues in dispute.

## XV. SCHEDULING

The Parties have stipulated that the Expert Witness Disclosure deadline should be set for 120

days before trial, with rebuttal reports due 45 days before trial. Other than those modifications, the Parties have no other proposed modifications to the standard time frames specified in the Federal Rules of Civil Procedure.

## XVI. TRIAL

Given the complexity of this case, and the need for extensive discovery spanning decades, the parties request that trial be set no sooner than 2028.

## XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Parties have each filed a "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-15.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XIX. OTHER MATTERS

The parties have not identified any other matters to discuss at the CMC.

Dated: January 20, 2026

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

By: */s/ David A. Diepenbrock*
David A. Diepenbrock
Attorneys for Plaintiffs
SIERRA NORTHERN RAILWAY and
MENDOCINO RAILWAY

Dated: January 20, 2026

EDLIN GALLAGHER HUIE + BLUM

By: */s/ Christopher J. Dow* as authorized 1/20/26
Fred M. Blum
Christopher J. Dow
Attorneys for Defendant
CITY OF FORT BRAGG