DAVID A. DIEPENBROCK (SBN 215679)
ANNA R. MARCROFT (SBN 343257)
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:    916.558.6000
Facsimile:    916.446.1611
Email:  ddiepenbrock@weintraub.com
            amarcroft@weintraub.com

Attorneys for Plaintiffs,
SIERRA NORTHERN RAILWAY and
MENDOCINO RAILWAY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| SIERRA NORTHERN RAILWAY, a California corporation, and MENDOCINO RAILWAY, a California corporation,<br><br>             Plaintiffs,<br><br>     vs.<br><br>CITY OF FORT BRAGG, and DOES 1 through 25, inclusive,<br><br>             Defendants. | Case No.: 4:24-cv-04810-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  February 10, 2026<br>Time:  2:00 pm<br>Dept:  6<br>Judge: Honorable Jon S. Tigar<br><br>Complaint Filed:  August 7, 2024 |

## I. JURISDICTION AND SERVICE

This Court has jurisdiction over this action based on the claims alleged under federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs have asserted a takings claim under the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution through 42 U.S.C. § 1983 as well as supplemental state law claims. The operative Third Amended Complaint also alleges claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). Defendant, which was served on September 9, 2024, does not dispute that the Court has personal jurisdiction or that venue is proper. There are no named parties that remain to be served at this time. Plaintiffs filed an Application to Allow "Doe" Defendants with respect to Plaintiffs' state law claims (ECF No. 4) that was denied as moot as a result of Plaintiffs' filing the First Amended Complaint (see ECF No. 27). Plaintiffs will file an Application to Allow "Doe" Defendants with respect to Plaintiffs' state law claims in the operative Third Amended Complaint before the date of the next case management conference.

## II. FACTS

### A. Brief Chronology of Facts

The Property at issue is the former site of a sawmill ("Mill") that Union Lumber Company began operating in 1885. Georgia-Pacific, LLC ("GP") subsequently acquired and operated the Mill until August 2002. The Property contains a water body commonly known as the "Mill Pond," and also referred to as "Pond 8." Mill Pond is approximately eight (8) acres in size and is the largest surface water body on the Property.

In 2002, GP ceased all Mill operations at the Property.

In 2004, GP voluntarily began investigating alleged environmental concerns at the Property. The Regional Water Quality Control Board, North Coast Region initially oversaw the investigation.

In 2007, the California Department of Toxic Substances Control ("DTSC") issued a Site Investigation and Remediation Order for the Mill Site (the "Order") naming GP as the Responsible Party. The Order divided the Mill Site into Operable Units ("OU"): OU-A, OU-B, OU-C, OU-D, and OU-E. Pond 8 is located in OU-E.

**weintraub tobin chediak coleman grodin**
law corporation

In 2012, GP brought a CERCLA action against Officemax and Boise Cascade, *Georgia-Pacific, LLC v. Officemax Inc. and Boise Cascade, LLC*, U.S. Dist. Ct. N.D. Cal., Case No. 12-02797-RS ("Georgia Pacific CERCLA Action"). The City was later joined as a third-party defendant. The case against the City was ultimately dismissed with prejudice.

In 2019, DTSC approved GP's Final Feasibility Study for remediation of OU-E.

In 2020, GP submitted a Draft Remedial Action Plan for OU-E (the "OU-E RAP") that recommended Institutional Controls/Containment as the preferred remedial alternative for each of the few remaining areas of concern, including Pond 8.

In 2021, Plaintiff Mendocino Railway ("MRY") acquired the portion of the Mill Site containing the Mill Pond through eminent domain proceedings the City opposed. MRY subsequently transferred the property to Plaintiff Sierra Northern Railway ("SNR").

In 2022, DTSC amended the Order to add MRY as a Respondent. DTSC subsequently informed MRY that the *City* opposed the OU-E RAP, and had requested further analysis.

In 2024, DTSC amended the Order to add SNR as a Respondent.

In 2025, Plaintiffs submitted an OU-E Feasibility Study Addendum to DTSC that again recommended Institutional Controls/Containment for OU-E, and provided updated cost estimates for that and alternative remediation approaches.

**B.     Statement of Principal Factual Issues in Dispute**

The principal factual issues in dispute include: (1) whether the City's stormwater system releases "hazardous substances" into Pond 8; (2) whether the City's stormwater system and/or Pond 8 is a "facility" under CERCLA; (3) the scope of the Parties' alleged responsibility for response costs to remediate Pond 8; and (4) whether the damage to Plaintiff's property has been substantially caused by an inherent risk presented by the deliberate design, construction, or maintenance of the City's stormwater system.

**C.     Plaintiffs' Statement of Additional Relevant Facts**

Plaintiffs had no involvement in the Georgia Pacific CERCLA Action, no ability to control the manner in which it was conducted, nor any input on how it was resolved.

///

### D. Defendant's Statement of Additional Facts

The primary allegation against Fort Bragg is that its storm water from Alder Creek contaminated Pond 8, one of the industrial ponds at the Mill. This storm water was used by the Mill operators as part of the Mill's industrial water supply. Fort Bragg did not determine how its storm water would be used or where it would be disposed.

The primary contaminants in this case are a family of chemical compounds called dioxins and furans. These compounds are formed by the incomplete combustion of wood. For the 117 years it operated, the major fuel sources at the Mill were wood debris and bark from milled lumber. The Mill operators burned this wood to operate the Mill and create electricity, the excess of which was sold. Residue from the burned wood, and the resulting dioxin contamination, is found throughout the Mill. Residue from burned wood is called "fly-ash." In approximately 1984, the State of California designated fly-ash a presumptive hazardous waste due to its toxicity.

Plaintiffs claim that Defendant's storm water caused the dioxin contamination in Pond 8. Defendant believes Plaintiffs are incorrect for the following reasons:

1. Dioxin contamination is found throughout the Mill, even at locations where Fort Bragg is not alleged to have contributed storm water;
2. The Mill operators' decision to create Pond 8 and use it as the Mill's industrial water source was made before the City of Fort Bragg's existence;
3. The Mill operators contaminated Pond 8 by using it as a critical component of their operations for milling lumber and generating electricity; and
4. The levels of contamination found in Pond 8 far exceed that which could be caused by Fort Bragg's storm water.

### III. LEGAL ISSUES

The principal disputed legal issues are whether the City is liable for any of its stormwater discharges onto the Property, and for any of the remediation costs at the Property.

Another primary dispute is whether Defendants, as alleged potentially responsible parties for the Property, and where City has asserted a CERCLA Section 113 counterclaim against Plaintiffs as

///

1  alleged potentially responsible parties, should have any recovery by Plaintiffs from Defendants
2  equitably allocated among all Parties under CERCLA Section 113 equitable allocation principles.

### A. Disputed Points of Law

The Parties currently dispute the following points of law: (1) application of the "federally permitted release" exception to CERCLA liability (see *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F.Supp.2d 1118, 1184 (C.D. Cal. 2003); and (2) application of the "useful product" defense (see *American Intern. Specialty Lines Ins. Co. v. U.S.*, 2008 WL 1990859 *15-16 (January 31, 2008).

### IV. MOTIONS

On January 6, 2025, the City filed a motion to dismiss Plaintiffs' CERCLA claims, which was granted with leave to amend. (ECF No. 45.) Plaintiffs have not finalized their plans for motion work, but reserve their right to file: (1) a motion to bifurcate the issue of liability on Plaintiffs' CERCLA and inverse condemnation claims from the remaining claims and issues; (2) a motion for preliminary injunction against the City to require the City to cease its on-going discharges of contaminated stormwater onto the Property; and (3) a motion for summary judgment, or alternatively, motion for partial summary judgment. The City likewise reserves its right to seek summary disposition at a later date.

### V. PLEADINGS

Plaintiffs filed and served their Third Amended Complaint on August 4, 2025. (ECF No. 46.) The City filed its Answer to Plaintiffs' Third Amended Complaint on October 27, 2025. (ECF No. 55.).  The City may add additional parties via cross-complaint, including but not limited to Georgia-Pacific, LLC and the California Department of Transportation aka Caltrans. Defendant originally sought to implead these parties by January 19, 2026, but now proposes February 26, 2027 as the new such deadline. Plaintiffs also propose February 26, 2027 as the deadline for Plaintiffs to add any Doe defendants (including without limitation, Georgia-Pacific, LLC and/or OfficeMax) or to file a motion seeking leave to file a Fourth Amended Complaint, and for any of the parties to add or dismiss any claims or defenses.

### VI. EVIDENCE PRESERVATION

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of

1  Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and
2  conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to
3  preserve evidence relevant to the issues reasonably evident in this action.

## VII. DISCLOSURES

Both Parties have now served their initial disclosure under Fed. R. Civ. P. 26. In accordance with Fed. R. Civ. P. 26, the Parties disclosed: (1) the name, address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the Parties may use to support their claims or defenses; (2) copies of documents and electronically stored information that the Parties may use to support their claims or defenses; (3) computations of damages; (4) identification of experts; and (4) insurance information. As of this date, Plaintiffs are informed that the City has not fully complied with its initial disclosure obligations, and have initiated the meet and confer process with the City on the subject.

## VIII. DISCOVERY

The parties have engaged in settlement discussions aimed at a global resolution of all disputes presently pending between them. Accordingly, they deferred making their initial disclosures, and taking discovery in this case. Particular discovery disputes are not anticipated at this time.

No discovery has been conducted to date. The Parties intend to use all discovery tools available including written discovery and depositions. The scope of discovery is anticipated to be broad, given the relevance of the historic uses of the Mill Pond by the City spanning many decades and the ongoing 20-year remediation effort. The Parties do not currently propose any modifications or limitations to the discovery rules, and have not yet considered entering into a stipulated discovery order. Plaintiffs contemplate that a protective order may be necessary to facilitate the City's production of relevant evidence related to the prior cost-recovery action that may be subject to a confidentiality agreement between the City, Georgia-Pacific, and Office Max. The Parties are currently assessing the subjects on which discovery is needed and whether discovery should be conducted in phases or focused on particular issues. The Parties' current discovery plan is reflected in the deadlines in the Proposed Order attached hereto.

///

## IX. CLASS ACTIONS

Not applicable.

## X. RELATED CASES

There are no cases that are "related" in the strict sense. However, Mendocino Railway is currently adverse to the City of Fort Bragg in two pending matters: *City of Fort Bragg v. Mendocino Railway, Mendocino County Superior Court*, Case No. 21CV00850; *Mendocino Railway v. Ainsworth*, U.S. Dist. Ct., N.D. Cal., Case No. 4:22-cv-04597-JST (currently on appeal).

## XI. RELIEF

Plaintiffs seek: (1) damages for costs incurred and to be incurred for the investigation, removal, remediation and/or other mitigation of the contamination or damage to the Property and Mill Pond; (2) an order requiring the City to take such action as may be necessary to remediate and/or to remove all contamination at the Property and Mill Pond caused or conveyed by the City; (3) an order enjoining the City from taking any action(s) that would materially interfere with Plaintiffs' use and enjoyment of the Property and/or Mill Pond, including to cease and desist from continuing to discharge contaminated and polluted stormwater onto the Property; (4) monetary relief on their takings, nuisance, trespass, inverse condemnation, and negligence claims; (5) a declaratory judgment under CERCLA § 113(g)(2), 28 U.S.C. §§ 2201 and 2202, and/or state law that some or all future costs of removal and/or remedial action incurred by Plaintiffs in response to releases caused by the City are costs for which the City must reimburse Plaintiffs, including the incremental cost of any City-mandated "truck and dump" remediation method, and that Plaintiffs' proposed remediation plan for Pond 8 is consistent with the National Contingency Plan. Plaintiffs are investigating, but have not yet determined the total amount of damages sought.

Plaintiffs provide the following good faith estimate of remediation costs/damages, which are classified into the following two categories: (1) Costs of remediation required to meet DTSC requirements for protection of human health and the environment under reasonable future use cases due to contributions of contamination from the City to Pond 8; and (2) Cost escalation of remediation compared to the recommended approach to meet unreasonable potential future use cases or cleanup

/ / /

standards promoted and/or imposed by the City, but not required in similar situations by state and federal requirements.

| Remediation Option | Estimated Cost | Escalation from Recommended |
|---|---|---|
| Institutional Controls (Recommended) | $ 7,616,000 | $ 0 |
| Partial Excavation and Disposal | $ 15,282,000 | $ 7,666,000 |
| Full Excavation and Disposal | $ 38,977,000 | $ 31,361,000 |

The foregoing cost estimates were developed as part of feasibility studies intended to allow comparison of alternatives within an estimation range of +50% to -30% and rely on aggregation of cost estimates for the assumed scope elements developed over multiple years beginning before 2017 up through 2025, and will require continued adjustment to reflect the significant inflation and construction cost increases that have occurred.

Defendant primarily seeks the following: (1) denial of any relief whatsoever to Plaintiffs; (2) an award of costs, expert consultants' fees, witness fees, and reasonable attorneys' fees incurred in the defense of this action including the counterclaims and cross actions; (3) if Defendant has any liability to Plaintiffs, contribution from Plaintiffs under CERCLA Section 113, preferably resulting in a zero allocation of cleanup cost to Defendant; and (4) a declaration that Plaintiffs are obligated to pay to the City all future response costs and any other costs incurred by City hereafter in response, removal or remediation efforts incurred.

## XII. SETTLEMENT AND ADR

The Parties held a private mediation session on December 19, 2025. Although there were some productive discussions, the case did not resolve. If the City stipulates to bringing appropriate City representatives at a further session, Plaintiffs would be willing to hold an additional mediation session with the same neutral on or before May 15, 2026. Regardless of whether a further mediation session is held, the parties are amenable to participating in a settlement conference to be held on or about June 16, 2028. The Parties have not identified any key discovery or motions necessary to position the Parties to negotiate a resolution.

/ / /

/ / /

## XIII. OTHER REFERENCES

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. NARROWING OF ISSUES

The parties have not yet agreed to any specific proposal that would narrow the issues in dispute. The Parties will attempt to identify issues that may be narrowed by agreement or motion through discovery which has not yet occurred. The most consequential issue in the case is whether the City is liable under theories of CERCLA and inverse condemnation for its ongoing discharges of stormwater runoff into Pond 8. Neither Party has yet made a formal request or motion to bifurcate the issue of liability under CERCLA and inverse condemnation from the remaining claims and issues; however, such bifurcation could expedite the resolution of issues at trial.

## XV. SCHEDULING

The Parties agree to the following key deadlines and cutoffs:

| | |
|---|---|
| Joinder of Parties & Amendment of Pleadings: | February 26, 2027 |
| Fact Discovery Cutoff: | April 21, 2028 |
| Expert Disclosures: | June 4, 2028 |
| Dispositive Motions: | June 16, 2028 |
| Expert Rebuttal Reports: | August 18, 2028 |
| Pretrial Conference: | September 15, 2028 |
| Trial: | October 2, 2028 |

## XVI. TRIAL

The Parties estimate that if all issues and claims are tried together, presentation of the evidence would last approximately three (3) weeks, or 15 full court days. Alternatively, Plaintiffs estimate that if the issue of liability on the CERCLA and inverse claims were tried separately, trial of those issues would last between 10 and 12 court days, and that a trial on Plaintiffs' damages would last between three (3) and five (5) court days. Bifurcation would reduce the burden on jurors, and otherwise promote judicial economy.

## XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Parties have each filed a "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-15.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XIX. OTHER MATTERS

The parties have not identified any other matters to discuss at the CMC.

Dated: February 3, 2026

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

By: */s/ David A. Diepenbrock*
David A. Diepenbrock
Attorneys for Plaintiffs
SIERRA NORTHERN RAILWAY and
MENDOCINO RAILWAY

Dated: February 3, 2026

EDLIN GALLAGHER HUIE + BLUM

By: */s/ Fred Blum* as authorized 2/3/26
Fred M. Blum
Christopher J. Dow
Attorneys for Defendant
CITY OF FORT BRAGG

- 10 -   Case No. 1:24-cv-04810-JST
JOINT CASE MANAGEMENT STATEMENT

#5080588v2

# [PROPOSED] ORDER

Pursuant to the above Joint Case Management Statement, and for good cause appearing therefore, it is hereby ordered that the following deadlines are set in this matter:

| | |
|---|---|
| Joinder of Parties & Amendment of Pleadings: | February 26, 2027 |
| Fact Discovery Cutoff: | April 21, 2028 |
| Expert Disclosures: | June 4, 2028 |
| Dispositive Motions: | June 16, 2028 |
| Expert Rebuttal Reports: | August 18, 2028 |
| Pretrial Conference: | September 15, 2028 |
| Trial: | October 2, 2028 |

**IT IS SO ORDERED.**

DATED: _____

JON S. TIGAR
United States District Judge